UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADVANTAGE RESOURCING AMERICA, INC. and TECHNICAL AID CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> TAC WORLDWIDE, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 1:15-cv-10350 <br> ) <br> )    Hearing Requested <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Joel R. Leeman (BBO # 292070)
Sharona H. Sternberg (BBO # 682384)
SUNSTEIN KANN MURPHY & TIMBERS LLP
125 Summer Street
Boston, MA 02110-1618
(617)  443-9292
jleeman@sunsteinlaw.com

Attorneys for Plaintiffs,

ADVANTAGE RESOURCING AMERICA, INC.
and TECHNICAL AID CORPORATION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION .............................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................. 2

     A.    Advantage's Rights in the TAC Trademarks and Trade Name ............................. 2

     B.    Defendant's Prior Relationship with Advantage ..................................................... 5

     C.    Defendant is Using the TAC Marks in Direct Competition with Advantage in Violation of Advantage's Rights, Causing Consumer Confusion ................................................................................................................ 5

III.   ARGUMENT ...................................................................................................... 7

     A.    Advantage has a Strong Likelihood of Success on the Merits .............................. 7

           1.    Advantage has Rights in the Distinctive TAC WORLDWIDE Trademark and Trade Name and the TAC Logo ........................................................................................................ 8

           2.    There is a Strong Likelihood of Confusion ............................................ 12

               i.    The parties' marks are identical .................................................... 14

               ii.    The parties offer the same services to the same consumers and directly compete in the same channels of trade ........................................................................ 14

               iii.   There is clear evidence of actual confusion .................................. 15

               iv.   Defendant's intent in adopting the TAC worldwide mark and TAC logo supports a finding of infringement .............................................................................. 16

     B.    Advantage Will Suffer Irreparable Harm in the Absence of Immediate Injunctive Relief ............................................................................... 18

     C.    The Balance of Equities Favors Advantage. ......................................................... 19

     D.    An Injunction Against Defendant is Consistent with the Public Interest ................................................................................................................... 20

IV.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Alliant Energy Corp. v. Alltel Corp.*, 344 F. Supp. 2d 1176 (S.D. Iowa 2004) ........................... 10

*Am. Ass'n for Justice v. The Am. Trial Lawyers Ass'n*, 698 F. Supp. 2d 1129 (D. Minn. 2010) ................................................................................................ 10, 11

*Aura Commc'ns., Inc. v. Aura Networks, Inc.*, 148 F.Supp.2d 91 (D. Mass. 2001) .................... 19

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8 (1st Cir. 2004) ................................ 16

*Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48 (D. Mass. 1993) ......................................... 8

*Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22 (1st Cir. 1989)......................................... 9, 14, 17

*Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100 (D. Mass. 1999) ............................. 9

*Calamari Fisheries, Inc. v. The Village Catch, Inc.*, 698 F.Supp. 994 (D. Mass. 1988) .................................................................................... 8, 14, 17, 18, 19

*Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37 (D. Mass. 1995) .................................... 15

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, No. 4:01CV441, 2001 WL 34104923 (N.D. Fla. Nov. 1, 2001)........................................................ 10, 17, 18, 19, 20

*Curves Intern. v. Fox*, No. 12-12250, 2013 WL 1946826 (D. Mass. May 9, 2013).............. 18, 19

*DeCosta v. Columbia Broadcasting Sys., Inc.,* 520 F.2d 499 (1st Cir. 1975) .............................. 15

*Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456 (D. Mass. 1997) ........................ 8

*Equine Techs., Inc. v. Equitechnology, Inc.,* 68 F.3d 542 (1st Cir. 1995) ................................ 7, 14

*First Fed. Sav. & Loan Ass'n of Council Bluffs v. First Fed. Sav. and Loan Ass'n of Lincoln*, 929 F.2d 382 (8th Cir. 1991) ................................................................ 11

*Gamlen Chem. Co. v. Gamlen*, 79 F.Supp. 622 (W.D. Pa. 1948)................................................. 13

*Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir. 1989) ..................................... 12

*K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907 (1st Cir. 1989) .......................................... 18

*Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322 (S.D.N.Y. 2011).................................... 11, 17, 19

*McNeil-PPC, Inc. v. Merisant Co.*, No. 04-1090, 2004 WL 3316380 (D.P.R. July 29, 2004) ................................................................................................ 9, 15

*New Comm. Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir. 2002).......................... 7

*Peoples Federal Sav. Bank v. People's United Bank,* 672 F.3d 1 (1st Cir. 2012)....................... 18

*Peter Luger Inc. v. Silver Star Meats Inc.*, No. 01-1557, 2002 WL 1870066 (W.D. Pa. May 17, 2002).............................................................................................. 11, 12, 13, 18

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 (1st Cir. 1981) ............................................................................................................................ 7

*Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219 (D. Mass. 2011) ........................... 7

*Purcell v. Summers*, 145 F.2d 979 (4th Cir. 1944) ............................................... 11, 13

*S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3rd Cir. 1992)............................ 14

*Santander Consumer USA Inc. v. Walsh*, 762 F.Supp.2d 217 (D. Mass. 2010) .......................... 12

*Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633 (1st Cir. 1992) ......................................................................................................................... 18

*Star Fin. Servs., Inc., v. Aastar Mortgage Corp.*, 89 F.3d 5 (1st. Cir. 1996) ............... 16

*Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F.Supp. 49 (D. Mass. 1990) ........................... 20

*Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir. 1978) ...................... 13

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812 (1st Cir. 1987).................... 17, 20

**Statutes**

15 U.S.C § 1115(a) ................................................................................................ 8

15 U.S.C. §1125(a) ................................................................................................ 7

**Other Authorities**

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ............. 10, 14, 17, 19

3A Callman, The Law of Unfair Competition, Trademarks & Monopolies (4th ed. 1983) ....................................................................................................... 14

Restatement (First) of Torts § 752 (1938) ................................................................ 12

Restatement (Third) of Unfair Competition § 30 (1990)............................................. 10

# I. INTRODUCTION

Defendant, a newly started staffing agency, holds itself out to the world as TAC Worldwide, Inc.  This is the same name by which plaintiffs Advantage Resourcing America, Inc. and Technical Aid Corporation (collectively, "Advantage"), nationally and globally known staffing agencies, had been widely known until 2010, and by which they are still known, in connection with their information technology ("IT") and technical staffing services. Defendant has intentionally misappropriated, traded on, and wrongfully sought to profit from the goodwill and reputation of Advantage, the previous employer of two of defendant's directors, and has used  two of Advantage's federally registered trademarks to do so.

Since October 2014, defendant has been using the corporate name TAC Worldwide, Inc., the domain name TACworldwideinc.com, and the identical TAC logo owned and registered by Advantage.  Defendant's wrongful behavior is not inadvertent or innocent.  It adopted the name TAC Worldwide and the TAC logo after its principals had been employed at Advantage, and now uses the marks in the same channels of trade to the same customers to compete directly with Advantage.  Deliberately counting on consumer confusion, defendant announced to the world "TAC is BACK!" on its website and even moved into Advantage's prior corporate headquarters.

The only conceivable reason for adopting the identical name and logo is to confuse customers and capitalize on the goodwill developed and earned by Advantage.  Defendant even admitted to one of Advantage's customers that it adopted the name TAC Worldwide primarily for "name recognition."  Defendant's unlawful and knowingly deceptive acts are causing serious and irreparable harm to Advantage.  Because Advantage has clear rights in its TAC trademarks and there is substantial likelihood of consumer confusion, Advantage has a high likelihood of success on the merits.  Advantage seeks injunctive relief for trademark infringement, unfair

competition, and deceptive trade practices in violation of the laws of the United States and the Commonwealth of Massachusetts.

## II.      FACTUAL BACKGROUND

### A.      Advantage's Rights in the TAC Trademarks and Trade Name

Plaintiffs, Advantage Resourcing America, Inc. and its wholly owned subsidiary Technical Aid Corporation (collectively, "Advantage"), are nationally and globally recognized staffing agencies that match candidates in many fields with companies in need of long-term and short-term employees. Declaration of Mark Marheineke ("Marheineke Decl.") ¶ 1. One of the largest staffing firms in the U.S., and a leading company in the technical staffing field, Advantage's largest customers include data and cloud storage companies, financial institutions, software companies, and automotive companies, among others. *Id.* ¶¶ 2, 28. Every year, it successfully places thousands of qualified engineers and IT professionals in the technical workforce. *Id.* ¶ 28.

Advantage has used the name "TAC Worldwide Companies" as far back as at least February 1998 and "TAC Worldwide" since at least 2004 to refer to the family of companies providing staffing solutions to the technical industries, including for IT and engineering positions. *Id.* ¶ 6. Advantage owns federal trademark registrations for the mark TAC WORLDWIDE and the TAC corporate logo (collectively, the "TAC Marks"), including:

- U.S. Registration No. 3587688 for TAC WORLDWIDE (word plus design) (the "TAC Worldwide Mark"), in connection with "Employment Agency and provision of contract worker services," registered March 10, 2009. *Id.* ¶ 8; Marheineke Ex. A.



- U.S. Registration No. 1177574 for TAC (word plus design) ("the TAC Logo"), in connection with "Providing temporary contract workers for services in business of others," registered November 10, 1981. *Id.* ¶ 10; Marheineke Ex. A.



Advantage widely used the TAC Worldwide Mark in correspondence, publicity, contracts, and the internet. *Id.* ¶ 9. For many years, beginning in at least 1979, Advantage widely used the TAC Logo on correspondence and letterhead. *Id.* ¶ 11. Advantage has invested considerable time, money, and effort in promoting its TAC Marks and in building up the goodwill associated with its marks. *Id.* ¶ 13. By virtue of these efforts, Advantage has earned substantial recognition and goodwill in its service marks and is widely known as "TAC Worldwide," especially with its long-standing customers, sub-vendors and professional employees. *Id.*

When RGF Staffing USA, Inc., acquired all of the outstanding common stock of Advantage in December 2011, it acquired the goodwill and reputation associated with the TAC Worldwide Mark and TAC Logo. *Id.* ¶ 14. Even after plaintiffs transitioned to the name Advantage Resourcing, consumers and potential consumers[1] of Advantage's services continue to associate the name "TAC Worldwide" and the TAC Marks with Advantage. *Id.* ¶ 15. Just recently, a branch manager representing multiple U.S. states noted that within her marketplace, it

---

[1] Consumers and potential consumers of Advantage's services include its customers, for whom Advantage supplies skilled workers; other staffing companies, which act as sub-contractors (or "associate suppliers") to supplement Advantage's available workers; and the IT professionals and other workers who are placed with Advantage's customers. Marheineke Decl. ¶ 31.

is an ongoing, daily task to help clients understand that TAC has become Advantage Resourcing, and this transition will continue to take years. *Id.*

Advantage has existing contracts with customers and vendors, including some of its largest clients, in which the entity is still listed as "d/b/a TAC Worldwide." *Id.* ¶¶ 16-17; Marheineke Exs. C-E. Some Advantage clients continue to make checks payable to TAC Worldwide and submit tax documents using the TAC Worldwide name. *Id.* ¶ 18; Marheineke Exs. F-G. Additionally, Advantage continues to refer to itself as "formerly known as TAC Worldwide" or "f/k/a TAC Worldwide," including, for example, in submissions to the Department of Homeland Security in support of visas for its IT professionals and in claims submitted in a class action settlement. *Id.* ¶¶ 19-20; Marheineke Exs. H-I.

Advantage maintains the website registration for www.tacworldwide.com. *Id.* ¶ 21. Because so many customers, workers, and sub-vendors were familiar with the TAC Worldwide name, Advantage arranged for its TACWorldwide website to be redirected to its Advantage Resourcing site through September 2014. *Id.* Customers, suppliers, and technical professionals continue to associate the TAC marks with Advantage's services. *Id.* ¶ 22.

Additionally, consumers and potential consumers of Advantage's services associate the address 888 Washington Street with Advantage. Advantage's corporate headquarters and its IT and engineering recruiting and sales staff were located there for nearly ten years, and Advantage's subsidiary, which offers technical employment staffing, was known as "888 Consulting Group" as well as "TAC Worldwide." *Id.* ¶ 35. Potential candidates would often come to this address to meet with Advantage's recruiters. *Id.* ¶ 36. The main entrance of the building prominently displayed the TAC Worldwide mark. *Id.*; Marheineke Exhibit L.

## B. Defendant's Prior Relationship with Advantage

Defendant's president and treasurer (who are also directors) are former employees of Advantage and had intimate familiarity with Advantage's use of the TAC Marks.  *Id*.  ¶¶ 24-26. Defendant's president, Sanjeev Srivastava, was an employee of Advantage ("d/b/a TAC Worldwide") from 2009 through 2013.  *Id*. ¶ 24.  Mr. Srivastava's employee agreement refers to his employer as "TAC Worldwide" and uses the TAC Worldwide Mark.  *Id*. ¶ 25; Marheineke Ex. K.  While employed by plaintiffs' TAC Worldwide company, Mr. Srivastava specialized in placing technical workers who were citizens of India in U.S. IT positions.  *Id*. ¶ 24.

Similarly, defendant's treasurer, Randy Monahan, was employed by Advantage for twenty years, from 1994 through 2014, working with customers seeking IT employment solutions.  *Id*. ¶ 26.  His employment ended in mid-2014, just a few months before he incorporated defendant's competing company.  *Id*.; Marheineke Ex. J.

## C. Defendant is Using the TAC Marks in Direct Competition with Advantage in Violation of Advantage's Rights, Causing Consumer Confusion

The entity TAC Worldwide, Inc. was incorporated in Massachusetts on October 15, 2014. *Id*. ¶ 23; Marheineke Ex. J.  In December 2014, one or more of Advantage's employees received an invitation to a "TAC Worldwide Holiday Party" at 888 Washington Street, Dedham, MA, the former location of Advantage's corporate offices.  *Id*. ¶ 37; Marheineke Ex. M.  In a brazen effort to confuse website visitors, in December 2014, defendant's TAC Worldwide website www.TACworldwideinc.com proclaimed: "TAC is BACK!"  *Id*. ¶¶ 38-39; Marheineke Ex. N.

Just as alarming, defendant's current website prominently displays Advantage's TAC Logo.  *Id*. ¶ 40; Marheineke Ex. O.  Defendant's website touts that the newly formed TAC Worldwide, Inc. has "*always* placed concerted attention to its clients as its prime objective" (emphasis added), further suggesting defendant's affiliation with the long-existing Advantage.

*Id.* ¶ 42; Marheineke Ex. O. Defendant's website also states that TAC Worldwide, Inc. provides

"temporary, long-term, high level IT staffing and consulting services to customers worldwide,"

which are the same services offered by Advantage. *Id.* ¶ 41; Marheineke Ex. O. Thus, defendant

is marketing its own employment staffing services using the TAC Marks in direct competition

with Advantage, including by marketing its services to Advantage's current customers, in a

manner designed and likely to create confusion. *Id.* ¶ 43.

In fact, defendant's use of the TAC Marks has already caused actual confusion. On

January 7, 2015, Mr. Srivastava sent an email to Richard Brewer, Vice President of GeoLogics

Corporation, seeking resumes for a job opening on behalf of defendant "TAC Worldwide, Inc."

Affidavit of Richard A. Brewer ("Brewer Aff.") ¶ 5; Brewer Ex. A. The email included

Advantage's TAC Logo, and was signed by Mr. Srivastava as "President" of "TAC Worldwide,

Inc.," at 888 Washington Street in Dedham, Massachusetts. Brewer Ex. A. GeoLogics has a

long-standing supplier arrangement with Advantage, providing Advantage with IT workers since

2004. Brewer Aff. ¶ 4. After receiving this email, Mr. Brewer telephoned Mr. Srivastava and

asked him whether he was really with "TAC Worldwide." *Id.* ¶ 6. Mr. Srivastava said that he

was and that he was the CEO/owner, and that the company went into business in October 2014.

*Id.* When Mr. Brewer asked Mr. Srivastava why he chose the name "TAC Worldwide," Mr.

Srivastava replied it was "primarily because of name recognition." *Id.* ¶ 7.[2]

Defendant is willfully using the TAC Marks for its staffing services to create a false

impression that defendant and its services are affiliated or related to Advantage and Advantage's

_____

[2] Even major delivery services are confused. In late January 2015, a Federal Express package
and a UPS Overnight Express package, both of which were addressed to defendant TAC
Worldwide, Inc. at 888 Washington Street in Dedham, were delivered to Advantage's office in
Norwood. Marheineke Decl. ¶ 34. Also, in December 2014, at least one package intended for
Advantage was delivered to TAC Worldwide, Inc. at 888 Washington Street in Dedham. *Id.*

services, or that defendant is a successor or reincarnation of Advantage's TAC Worldwide companies.

## III.   ARGUMENT

Defendant's trademark infringement, unfair competition, and deceptive trade practices must stop immediately in order to protect against consumer confusion and to preserve Advantage's reputation and good will.  In determining whether to issue a preliminary injunction, the "*sine qua non* of this four-part inquiry is likelihood of success on the merits." *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir. 2002).[3]  This is especially true "when the preliminary injunction is based on a trademark claim, because the other factors tend to follow determinations regarding the likelihood of consumer confusion." *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 226 (D. Mass. 2011).

### A.  Advantage has a Strong Likelihood of Success on the Merits

Defendant's use of the TAC Marks infringes Advantage's rights, has caused confusion, and is likely to continue to cause confusion.  Where likelihood of confusion would result, the infringement of a trademark is prohibited by § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a). *See Polar Corp.*, 789 F. Supp. 2d at 227.  Infringement of a trademark under Massachusetts state law is congruent with the federal cause of action.  *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486-7 (1st Cir. 1981) ("Likelihood of confusion is… an essential element of a claim of trademark infringement, whether asserted under Massachusetts or federal law.").  "Unfair competition is almost universally regarded as a question of whether the defendant is passing off his goods or services as those of the plaintiff by

---

[3] The factors are (1) the moving party's likelihood of success on the merits; (2) whether the moving party will be irreparably injured by denial of relief; (3) the balance of equities between the parties; and (4) the public interest in the outcome. *Equine Techs., Inc. v. Equitechnology, Inc.,* 68 F.3d 542, 544 (1st Cir. 1995).

virtue of substantial similarity between the two, leading to confusion on the part of potential customers." *Digital Equip. Corp. v. AltaVista Tech., Inc*., 960 F. Supp. 456, 476 n.40 (D. Mass. 1997) (citation omitted). Since "the same facts which would support an action for trademark infringement would also support an action for unfair competition," courts often deal with the two claims in combined fashion. *Id*.

1. **Advantage has Rights in the Distinctive TAC WORLDWIDE Trademark and Trade Name and the TAC Logo**

Advantage has clear rights to the TAC Worldwide trademark and trade name and the TAC Logo. Advantage owns federal registrations in TAC WORLDWIDE (plus design) and the stylized TAC Logo in connection with its employment staffing services. Marheineke Decl. ¶¶ 7-11; Marheineke Exs. A and B. Under the Lanham Act, such registration is "prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration." 15 U.S.C. § 1115(a); *Calamari Fisheries, Inc. v. The Village Catch, Inc*., 698 F.Supp. 994, 1007 (D. Mass. 1988) (noting that federal registration creates a presumption of exclusive rights in the marks).

Moreover, the names "TAC Worldwide" and the TAC Logo (a stylized picture of a hand gesture making an "OK" sign) have no inherent meaning in the field of employment staffing, other than their association with Advantage, and are thus arbitrary or fanciful. Marheineke Decl. ¶ 12. *See Black Dog Tavern Co., Inc. v. Hall*, 823 F.Supp. 48 (D. Mass. 1993) ("Plaintiff's marks are properly classified as arbitrary or fanciful, as they bear no logical or suggestive relation to the actual characteristics of the goods or services... Rather, their intrinsic nature serves to identify a particular source of a product.").

The fact that defendant intentionally copied Advantage's marks is persuasive evidence of secondary meaning "because there is no incentive for a competitor to copy a design that has no

recognition among consumers." *McNeil-PPC, Inc. v. Merisant Co.*, No. 04-1090, 2004 WL 3316380, at *13 (D.P.R. July 29, 2004) (citing *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 32 (1st Cir. 1989)). Defendant admitted to a prospective consumer who questioned defendant's use of the TAC Marks that defendant adopted the name TAC Worldwide for "name recognition." Brewer Aff. ¶ 7. What's more, actual confusion is also strong evidence of secondary meaning. *Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100, 107 (D. Mass. 1999).

Advantage has used the trade name "TAC Worldwide Companies" as far back as at least February 1998 and "TAC Worldwide" since at least 2004 to refer to the family of companies providing staffing solutions to the technical industries, including for IT and engineering positions. Marheineke Decl. ¶ 6. Advantage widely used the TAC Marks in correspondence, publicity, contracts, letterhead, and the internet, and began using the TAC Logo from at least 1979. *Id.* ¶¶ 9, 11. Moreover, Advantage maintains the website registration for www.tacworldwide.com, and continued to redirect traffic from this site to its new Advantage site through September 2014. *Id.* ¶ 21. Advantage has invested considerable time, money, and effort in promoting its TAC Marks and in building up the goodwill associated with its marks. *Id.* ¶ 13. By virtue of these efforts, Advantage has developed substantial recognition and goodwill in its service marks and is widely known as "TAC Worldwide." *Id.*

Even while plaintiffs have changed their name to Advantage Resourcing, consumers and potential consumers of Advantage's services – including clients, sub-contractors, and potential professional employees – continue to associate the TAC Marks with Advantage, and the transition to the new name will continue to take years. Marheineke Decl. ¶ 15. Courts have always recognized that the rights and goodwill associated with a trademark can last long after a company adopts a new name. *See Alliant Energy Corp. v. Alltel Corp.*, 344 F. Supp. 2d 1176,

1187 (S.D. Iowa 2004) ("Despite a name change, a trademark may still possess significant goodwill and remain a valuable asset to a company ... Even in cases such as the present one, where there are extensive efforts to notify the public of the name change, there is still the possibility that goodwill remains in the marks.").  Restatement (Third) of Unfair Competition § 30 cmt. a (1990) (even where a designation has been abandoned, "it may for a time retain its significance as an indication of association with the former user.").

Because "subsequent use of an abandoned mark may well evoke a continuing association with the prior user, those who make subsequent use may be required to take reasonable precautions to prevent confusion." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, No. 4:01CV441, 2001 WL 34104923, *4 (N.D. Fla. Nov. 1, 2001), aff'd, 304 F.3d 1167 (11th Cir. 2002) (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 17.2). *See also* Restatement (Third) of Unfair Competition § 30 cmt. a (1990) "Unless the subsequent user adequately distinguishes its use of the designation from the use by the original owner, the subsequent use is likely to deceive prospective purchasers with respect to the source or sponsorship").  Far from taking appropriate precautions, defendant appears determined to foster a public association of itself with Advantage that does not exist.

Advantage has existing contracts with clients and sub-vendors in which the entity is still listed as "d/b/a TAC Worldwide," receives checks payable to TAC Worldwide, and continues to refer to itself and its affiliates as "formerly known as TAC Worldwide" or "f/k/a TAC Worldwide." Marheineke Decl. ¶¶ 16-20; Marheineke Exs. C-I.  Advantage thus continues to associate itself with its former name TAC Worldwide in order to capitalize on the goodwill and source identification of its services.  Marheineke Decl. ¶ 22.  *See Am. Ass'n for Justice v. The Am. Trial Lawyers Ass'n*, 698 F. Supp. 2d 1129, 1138 (D. Minn. 2010) ("use of the designation

'formerly' to capitalize on the goodwill and source identification of the marks constitutes bona fide use.") (citing cases); *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) (plaintiff's identification as "'formerly Gordon Carpet' plainly attempt[s] to capitalize on the good will in the 'Gordon Carpet' name by holding Plaintiff out as the successor to Gordon Carpet"); *First Fed. Sav. & Loan Ass'n of Council Bluffs v. First Fed. Sav. and Loan Ass'n of Lincoln*, 929 F.2d 382, 385 (8th Cir. 1991) (allowing injunctive relief where plaintiffs continue to capitalize on plaintiff's former name by identifying the company with the former institution). By the same token, Advantage's customers and potential customers continue to associate Advantage with the TAC Marks. Marheineke Decl. ¶ 15.

Additionally, through at least September 2014, the website www.tacworldwide.com was continuously redirected to Advantage's new website because many customers, professional employees, and vendors continued to be familiar with the TAC Worldwide name. Marheineke Decl. ¶¶ 13, 21. *See Am. Ass'n for Justice*, 698 F. Supp. 2d at 1134 (evidence that former organization's website was redirected after name change demonstrated continued association with prior name). Moreover, when RFG Staffing USA, Inc. acquired Advantage in 2011, it attained the goodwill and reputation associated with the TAC Marks. Marheineke Decl. ¶ 14.

Advantage did not forfeit its rights to the goodwill associated with the prior name TAC Worldwide simply because it was acquired and transitioned to a new name. *Peter Luger Inc. v. Silver Star Meats Inc.*, No. 01-1557, 2002 WL 1870066, *2 (W.D. Pa. May 17, 2002) ("[A] company which purchases the goodwill, trade name and trade dress of a product does not forfeit its right to any residual goodwill associated with those attributes merely because it transitions to a new brand name."). *See also Purcell v. Summers*, 145 F.2d 979, 984 (4th Cir. 1944) ("[I]t is well settled that to use the name of a corporation, which has transferred its assets and good will

to another, in such way as to attempt to appropriate the good will transferred and deprive the transferee of what it has thus acquired, is a wrong which should be enjoined, even though the transferring corporation is defunct at the time and the transferee is not using the name.") (citing cases); Restatement (First) of Torts § 752 (1938) cmt. b ("So long as the designation continues to be associated in the market with the prior user, he is entitled to protection against its deceptive use by others.").

In *Peter Luger*, the well-known meat company was acquired and changed its name, and a grandson seized the opportunity to start a competing business using the Luger name. 2002 WL 1870066 at *2. The district court reasoned that even if the plaintiff was no longer using the Luger name, "[a]t the least, any newcomer acts outside legal boundaries when it intentionally adopts the same name for a directly competing product in the same market, and uses substantially similar trade dress… thus implying that it is somehow a successor product." *Id.* As with defendant's conduct here, "to hold otherwise would result in unfair competition through intentionally creating public confusion as to the source and origin of the products they buy." *Id.*

## 2. There is a Strong Likelihood of Confusion

Defendant's use of the TAC Marks is likely to cause consumer confusion. In analyzing likelihood of confusion in trademark infringement cases, the First Circuit considers the following factors: (1) the similarity of the marks; (2) the similarity of the goods and services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective consumers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark. *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 222 (1st Cir. 1989). The same likelihood of confusion standard applies to the unfair competition and false designation of origin claims. *Santander Consumer USA Inc. v. Walsh*, 762 F.Supp.2d 217, 225 (D. Mass. 2010).

Defendant's use of the TAC Marks gives the consuming public the impression that defendant's services are associated with Advantage or that it is a successor to Advantage's TAC Worldwide company. Defendant adopted the corporate name TAC Worldwide Inc., and prominently displays the TAC Logo on its website and emails. Marheineke Decl. ¶¶ 23, 40; Marheineke Exs. J and O; Brewer Ex. A. Defendant offers IT employment staffing services, which are identical to the services provided by Advantage in connection with the TAC Marks. Marheineke Ex. O. What's more, defendant explicitly wants consumers to associate its company with Advantage's TAC Worldwide company, announcing on its site that "TAC is BACK!" and setting up its offices at Advantage's prior corporate headquarters. Marheineke Decl. ¶¶ 37-38, Marheineke Exs. M-N. The fact that actual confusion has occurred only highlights the high likelihood of consumer confusion. *Id.* ¶ 34; Brewer Aff. ¶ 5-7.

Courts have granted injunctive relief in similar circumstances where a defendant attempts to confuse consumers by adopting a mark formerly used by the plaintiff. *See Peter Luger*, 2002 WL 1870066 at *1 (granting injunction where a former employee attempted to appropriate the goodwill associated with his former employers, trade name, and trade dress to capitalize on the corporate history and reputation); *Gamlen Chem. Co. v. Gamlen*, 79 F.Supp. 622, 635 (W.D. Pa. 1948) ("A person in the employment of another individual cannot withdraw from said employment and proceed to sell the same product, using his own surname which is similar to that of his former employer"); *Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734 (2d Cir. 1978) (grandson enjoined from using the name of his family's winery business whose assets were sold to plaintiff, where the grandson, a former employee of plaintiff, "knew well the customer appeal of the Taylor name ... [and] chose to capitalize on the name."); *Purcell*, 145 F.2d at 984 (notwithstanding plaintiff's cessation of use, the public would be misled unless

defendant was enjoined from using the plaintiff's former name); McCarthy, § 17:15 at 17–24

("Consumers know nothing of the state of mind of the former trademark user. But they may well

mistakenly think that a new use of that mark by another is a renewed use by the former user.").

### i.       The parties' marks are identical

Defendant is using the name TAC Worldwide and the TAC Logo, which are identical to

Advantage's federally registered marks.  The fact that Advantage's registration for its TAC

Worldwide Mark contains a curved line underneath the dominant words is inconsequential.  *See*

*Calamari*, 698 F.Supp at 1009 ("Similarity of the marks is determined on the basis of the total

effect of the designation, rather than a comparison of individual features.").  A mark must be

considered in its entirety, with a view toward what the purchasing public would think when

confronted with the mark as a whole.  *Equine,* 68 F.3d at 544.  All that is required is enough

similarity to confuse consumers.  *Id*. at 546.  Similarly, defendant's use of "Inc." after TAC

WORLDWIDE is not enough to distinguish the marks in the eyes of consumers.

Thus, likelihood of confusion is inevitable.  *See Boston Athletic*, 867 F.2d at 31 n. 7

(citing 3A Callman, The Law of Unfair Competition, Trademarks & Monopolies § 21.07 at 25

(4th ed. 1983)) ("the public normally assumes that articles bearing the same mark are from the

same source.").  *See also S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3rd Cir. 1992)

("there is a great likelihood of confusion when an infringer uses the exact trademark as the

plaintiff."); McCarthy, § 23.3 at 56 ("Cases where a defendant uses an identical mark on

competitive goods … are 'open and shut'....").

### ii.      The parties offer the same services to the same consumers and directly compete in the same channels of trade

There is a strong likelihood of confusion where parties offer virtually the same goods and

services.  *Boston Athletic*, 867 F.2d at 30.  Advantage is one of the world's leading companies

for technical staffing and project-based employment solutions, placing thousands of qualified

engineers and IT professionals in the technical workforce. Marheineke Decl. ¶ 28. Potential

consumers of Advantage's services include companies seeking long-term and short-term

employees, subcontractor employment agencies, and technical professionals seeking

employment. *Id*. ¶ 31. Like those provided by Advantage, defendant offers "temporary, long-

term, high level IT staffing and consulting services to customers worldwide." *Id*. ¶ 41.

Defendant is marketing its own employment staffing services using the TAC Marks in

direct competition with Advantage, including by advertising its services to Advantage's current

customers such as GeoLogics. *Id*. ¶ 29. Both Advantage and defendant are based in

Massachusetts, indeed just four miles from each other. *Id*. ¶ 4. Defendant's directors are former

employees of Advantage, and are no doubt utilizing the connections and IT staffing experience

gained at Advantage to the benefit of their new business. *Id*. ¶ 23-29. Thus, the parties are direct

competitors and have overlapping channels of trade and prospective consumers.

### iii.     There is clear evidence of actual confusion

When a preliminary injunction is sought shortly after the infringing mark first appears,

proof of actual confusion is frequently not available. *McNeil-PPC*, 2004 WL 3316380, at *19,

citing *DeCosta v. Columbia Broadcasting Sys., Inc.,* 520 F.2d 499, 514 (1st Cir. 1975). Here,

however, there is evidence of actual confusion, which is highly probative. "Actual confusion is

such persuasive evidence of the likelihood of confusion that even a minimal demonstration of

actual confusion may be significant." *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 45

(D. Mass. 1995) (internal citations omitted).

Richard Brewer, a vice president at Advantage's longstanding sub-vendor GeoLogics,

was apparently so confused by defendant's use of the TAC Marks in a solicitation email that he

reached out to defendant for clarification. Brewer Aff. ¶ 5-6. When Mr. Brewer asked Mr.

Srivastava why he chose the name "TAC Worldwide," he was told it was primarily because of "name recognition." *Id.* ¶ 7. Additionally, packages addressed to Advantage have been delivered to defendant, and those addressed to defendant have been delivered to Advantage's Norwood address. Marheineke Decl. ¶ 34. *See Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 18 (1st Cir. 2004) (misdirected mail and correspondence evidence of actual confusion).

The actual confusion that has already arisen strongly supports Advantage's claims that the marks are confusingly similar and deceive consumers.

iv. **Defendant's intent in adopting the TAC Worldwide mark and TAC Logo supports a finding of infringement**

While evidence of bad faith is not required in a trademark infringement case, s*ee Star Fin. Servs., Inc., v. Aastar Mortgage Corp.*, 89 F.3d 5, 11 (1st. Cir. 1996), defendant's willful and knowing appropriation of Advantage's distinctive trademarks is clearly intended to cause confusion and enable defendant to trade on Advantage's goodwill and reputation.

Two of defendant's directors worked at Advantage for years, knowing full well that Advantage was known in the industry as TAC Worldwide and benefiting from the enjoyment of the goodwill associated with the TAC Marks. Marheineke Decl. ¶ 24-26. Rather than actually earn its reputation, defendant instead decided to shorten the path to success by trading on Advantage's hard-earned reputation and goodwill. Defendant not only adopted the name and corporate logo of Advantage, but set up offices at Advantage's former corporate headquarters, which consumers associate with Advantage. *Id.* ¶¶ 35-37. Mr. Srivastava even admitted to a potential consumer that he chose the name TAC Worldwide "for name recognition." Brewer Aff. ¶ 7. Defendant's intent to deceive consumers and trade on Advantage's reputation was all too clear when it announced "TAC is BACK!" and claimed that defendant has "*always* placed

concerted attention to its clients." Marheineke Decl. ¶¶ 37, 41; Marheineke Exs. N and O. These are bold announcements from a company that had just opened shop.

The facts in this case are strikingly similar to those in *Marks Org., Inc. v. Joles*, where the defendant had worked as general manager at the original "Gordon Carpet" for over a decade, and was well aware of the good will in the name. 784 F. Supp. 2d at 331. After the original "Gordon Carpet" began using a new name, the defendant opened his own "Gordon Carpet" and advertised "We're back and better than ever." *Id*. There, the Court enjoined the defendant and found "there is little question that Defendant chose the name "Gordon Carpet" with the intent to capitalize on the good will and reputation associated with that name." *Id*. *See also Cumulus Media*, 2001 WL 34104923 at *5 (enjoining use of name "The Breeze" where "Defendant's conduct was and clearly is intended to cause listeners to believe that the radio station they know of as 'The Breeze' was 'back' at that location.").

Given defendant's prior relationship with Advantage, defendant's intentional appropriation of the identical marks on the same services is suspect and is intended to cause confusion and unlawfully trade on Advantage's reputation and goodwill. *See Calamari*, 698 F.Supp. at 1012 (defendant's intent suspect given parties' former relationship and supports inference of intent to trade on plaintiff's goodwill). Moreover, as the second comer, defendant had an obligation to avoid confusion. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987) ("when one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion."); McCarthy, § 23:64, at 23-194 (a junior user has an affirmative duty to avoid confusion, any doubt regarding confusion must be resolved against it); *Boston Athletic*, 867 F.2d at 34 (in cases of intentional copying, second comer presumed to intend confusing similarity and consumers are likely to be confused).

In sum, analysis of the *Keds* factors persuasively demonstrates that likelihood of confusion has resulted and will continue to result from defendant's use of the TAC Marks.

### B. Advantage Will Suffer Irreparable Harm in the Absence of Immediate Injunctive Relief

Advantage is being and will continue to be irreparably harmed if defendant's infringement and unfair competition is not enjoined. Marheineke Decl. ¶¶ 46-47. In the First Circuit, there is a substantial body of law holding that irreparable harm is presumed as a matter of law whenever a plaintiff in a trademark infringement action shows a likelihood of success on the merits. *Société des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("irreparable harm flows from an unlawful trademark infringement as a matter of law"). Although it is unclear whether that presumption remains good law, *see Peoples Federal Sav. Bank v. People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012), in any event, defendant's use of the TAC marks irreparably injures Advantage by the loss of its right to protect its reputation and the ability to control the use of its mark. *Calamari Fisheries,* 698 F.Supp. at 1014.

Since Advantage lacks control over the nature and quality of defendant's services, which may reflect negatively on Advantage's reputation, it will suffer irreparable harm. *See Curves Intern. v. Fox*, No. 12-12250, 2013 WL 1946826, *2 (D. Mass. May 9, 2013) (citing *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st Cir. 1989) ("[H]arm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages")). *See also Peter Luger*, 2002 WL 1870066 at *16; *Cumulus Media*, 2001 WL 34104923 at *5 (irreparable harm where "Defendant's use of 'The Breeze' is altering public perceptions of 'The Breeze' so as to associate the mark with Defendant and its services, over which the Plaintiff has no control. Such unauthorized use by Defendant of Plaintiff's identity cannot be compensated for adequately or accurately in money damages.").

### C. The Balance of Equities Favors Advantage.

In light of the irreparable injury that will be suffered by Advantage and its likelihood of success on the merits, the balance of equities favors Advantage.  Defendant registered for incorporation only in October 2014, while Advantage has invested in the TAC logo and TAC Worldwide name since 1979 and 1998, respectively.  Marheineke Decl. ¶¶ 6, 11, 23.  *See Aura Commc'ns., Inc. v. Aura Networks, Inc.*, 148 F.Supp.2d 91, 97-98 (D. Mass. 2001) (balance of equities favored senior user who had used mark for five years, where junior user had changed its name only eight months prior to motion for preliminary injunction); *Cumulus Media*, 2001 WL 34104923 at *5 (injury to plaintiff outweighs any harm of injunction where defendant had used the mark a short time and "built up little, if any good will" and recognition by its own use, whereas plaintiff used the mark for years and "built up considerable good will and reputation").

Defendant is free to compete directly with Advantage.  "Defendant may not, however, compete by sowing confusion in the marketplace through the use of a name [and logo] that belongs to a different business."  *Marks Org.*, 784 F. Supp. 2d at 336 ("The injunction imposed by this Court should not have any effect on Defendant's ability to continue to run his business and compete with Plaintiff in every way *except* through the use of a confusing trade name that Defendant does not have the right to use.") (emphasis in original).  Enjoining defendant's misconduct would simply work to restore fair competition.  *Calamari Fisheries,* 698 F.Supp. at 1015 (balance of harm in favor of plaintiff where defendants would merely "be required to use a different name, *not* to stop doing business or make any other changes") (emphasis in original).

In the event that any harm does occur to defendant, it will stem from defendant's own wrongful conduct in attempting to capitalize on Advantage's goodwill.  *Curves Intern.,* 2013 WL 1946826, at *2 (any hardship suffered by defendant from injunction was precipitated by own breach of agreement and infringement); McCarthy, § 30.51 ("the injury a defendant might suffer

if preliminarily enjoined may be discounted by the fact that the defendant brought that injury upon itself."). In such circumstances, the balance of the harm to Advantage clearly outweighs the harm, if any, to defendant.

### D. An Injunction Against Defendant is Consistent with the Public Interest

Giving maximum protection to trademarks serves the public interest because it allows the public to depend on the constancy of the quality of the goods and services it seeks. *Volkswagenwerk*, 814 F.2d at 820; *Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F.Supp. 49, 51 (D. Mass. 1990) ("public interest is served by promoting fair competition and preventing consumer confusion"); *Cumulus Media*, 2001 WL 34104923 at *5 ("Granting injunction will serve public interest" where "Defendant has promoted itself as "The Breeze" in a manner that has misled and deceived the public into thinking that WBZE, which is still known as 'The Breeze,' has moved to 107.1 or is operating an affiliated station at 107.1."). Far from taking appropriate precautions to prevent confusion, defendant seems to have made every effort to make confusion inevitable – usurping Advantage's name and logo, setting itself up in Advantage's former location, and announcing the "TAC is BACK!"

Public confusion has already resulted and will continue to result from defendant's infringing conduct unless this Court enjoins defendant's use of the TAC Marks. Therefore, this Court should enjoin defendant from using any mark that could be considered confusingly similar to Advantage's marks.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Preliminary Injunction and issue an order allowing the relief described in the proposed order filed simultaneously herewith.

Date: February 12, 2015                Respectfully submitted,

                                        ADVANTAGE RESOURCING AMERICA, INC.
                                        and TECHNICAL AID CORPORATION

                                        By their attorneys,

                                        /s/ Joel R. Leeman
                                        Joel R. Leeman (BBO # 292070)
                                        Sharona H. Sternberg (BBO # 682384)
                                        SUNSTEIN KANN MURPHY & TIMBERS LLP
                                        125 Summer Street
                                        Boston, MA 02110-1618
                                        (617) 443-9292
                                        jleeman@sunsteinlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served upon the registered agent of defendant TAC Worldwide, Inc. along with service of the Complaint by hand delivery.

                                        /s/ Joel R. Leeman
                                        Joel R. Leeman